JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
P.O. Box 112 - 25 Market Street
Trenton, New Jersey 08625-0112
Attorney for the State of New Jersey Department of Children and Families and the
State of New Jersey Division of Child Protection and Permanency

By:    Marvin L. Freeman
       Deputy Attorney General
       (609) 376-2440
       marvin.freeman@law.njoag.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANA GRACE RINALDI, et als., <br><br> Plaintiff, <br><br> v. <br><br> THE STATE OF NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES, et als, <br><br> Defendants. | Civil Action No. <br><br><br><br><br><br> **DECLARATION OF COUNSEL** |

Marvin L. Freeman, Deputy Attorney General, of full age, do of my own personal knowledge, make the following statements by way of Declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1.    I am licensed to practice law in the State of New Jersey and am admitted to practice before the United States District Court, District of New Jersey.

2.    I am employed by the State of New Jersey Department of Law and Public Safety as a Deputy Attorney General.

3.    I am assigned to the Law Enforcement and Corrections ("LEC") Section of the Division of Law, which provides legal representation to the State of New Jersey Department of Children and Families and the State of New Jersey Division of Child Protection and Permanency ("Defendants"), in this matter.

4.    I submit this Declaration on behalf of the Defendants in support of removal of this matter to this Court pursuant to 28 U.S.C. § 1441(a).

5.    On April 24, 2026, the Defendants were served with the summons and complaint.

6.    Based on the complaint, plaintiff asserted federal constitutional claims under 42 U.S.C. 1983 for alleged violations of Plaintiff's procedural due process rights. (*See* Exhibit-A, Complaint, ¶¶ 100-108).

7.    Attached hereto as **Exhibit A,** is a true and accurate copy of plaintiff's complaint.

8.    Attached hereto as **Exhibit-B**, are true and accurate copies of the affidavit of service.

I declare under penalty of perjury that the foregoing is true.  I understand that I can be punished if I willfully provide false information.

s/Marvin L. Freeman
Deputy Attorney General

Date: May 19, 2026

# EXHIBIT-A

*TIMOTHY L. DINAN (023232010)*
*LADDEY, CLARK & RYAN, LLP*
*Attorneys-at-Law*
*60 Blue Heron Road, Suite 300*
*Sparta, New Jersey 07871-2600*
*(973) 729-1880*
*Attorneys for Plaintiffs Jana Grace Rinaldi, f/k/a Jana Jackson f/k/a Jireh Woods and*
*C.R., a minor, by and through FRANCESCO RINALDI and KATHERINE RINALDI,*
*Guardians Ad Litem*

| | |
|---|---|
| JANA GRACE RINALDI, f/k/a JANA JACKSON f/k/a JIREH WOODS and C.R., a minor, by and through FRANCESCO RINALDI and KATHERINE RINALDI, Guardians Ad Litem<br><br>Plaintiff,<br><br>-vs-<br><br>THE STATE OF NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES, THE STATE OF NEW JERSEY DIVISION OF CHILD PROTECTION AND PERMANENCY f/k/a DIVISION OF YOUTH AND FAMILY SERVICES, IRMA AKCAY, in her individual capacity and as a DYFS caseworker, ALISON CASSONE in her individual capacity and as a DYFS caseworker, KETTY WILLIAMS in her individual capacity and as a DYFS supervisor, JOHN JACKSON, CAROLYNE JACKSON, THE STATE OF NEW JERSEY INTERSTATE COMPACT ON THE PLACEMENT OF CHILDREN ADMINISTRATORS 1-50 (true names being unknown), JOHN DOE CASEWORKERS 1-50 (individually and as DYFS or DCPP caseworkers, true names being unknown), JOHN DOE RESOURCE WORKERS 1-50 (individually and as DYFS or DCPP resource workers, true names being unknown), JOHN DOE INVESTIGATIVE WORKERS 1-50 (individually and as | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MORRIS COUNTY<br><br>Docket No. MRS-L-000747-26<br><br>CIVIL ACTION<br><br>**SUMMONS** |

1

DYFS or DCPP investigative workers, true names being unknown), JOHN DOE SUPERVISORS 1-50 (individually and as DYFS or DCPP supervisors, true names being unknown), JOHN DOE MANAGERS 1-50 (individually and as DYFS or DCPP managers, true names being unknown), ABC CORPORATIONS 1-100 (true names being unknown), ABC EMPLOYEES (true names being unknown), ABC GOVERNMENT ENTITIES 1-100 (true identities being unknown), ABC GOVERNMENT EMPLOYEES 1-100 (in their individual capacities and as government employees 1-100),

Defendants.

THE STATE OF NEW JERSEY, TO:

**THE STATE OF NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES**
**50 E. STATE STREET**
**TRENTON NJ 08625**

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided). A $175 filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN 971, Trenton, NJ 08625. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money,

2

wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated· April 8, 2026          /s/ Michelle M. Smith

_____

Michelle M. Smith, Clerk
Superior Court of New Jersey

Name of defendant to be served: **THE STATE OF NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES**

Address for service:          **50 E. STATE STREET**
**TRENTON NJ 08625**

3

*TIMOTHY L. DINAN (023232010)*
*LADDEY, CLARK & RYAN, LLP*
*Attorneys-at-Law*
*60 Blue Heron Road, Suite 300*
*Sparta, New Jersey 07871-2600*
*(973) 729-1880*
*Attorneys for Plaintiffs Jana Grace Rinaldi, f/k/a Jana Jackson f/k/a Jireh Woods and C.R., a minor, by and through FRANCESCO RINALDI and KATHERINE RINALDI, Guardians Ad Litem*

| | |
|---|---|
| JANA GRACE RINALDI, f/k/a JANA JACKSON f/k/a JIREH WOODS and C.R., a minor, by and through FRANCESCO RINALDI and KATHERINE RINALDI, Guardians Ad Litem<br><br>Plaintiff,<br><br>-vs-<br><br>THE STATE OF NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES, THE STATE OF NEW JERSEY DIVISION OF CHILD PROTECTION AND PERMANENCY f/k/a DIVISION OF YOUTH AND FAMILY SERVICES, IRMA AKCAY in her individual capacity and as a DYFS caseworker, ALISON CASSONE in her individual capacity and as a DYFS caseworker, KETTY WILLIAMS in her individual capacity and as a DYFS supervisor, JOHN JACKSON, CAROLYNE JACKSON, THE STATE OF NEW JERSEY INTERSTATE COMPACT ON THE PLACEMENT OF CHILDREN ADMINISTRATORS 1-50 (true names being unknown), JOHN DOE CASEWORKERS 1-50 (individually and as DYFS or DCPP caseworkers, true names being unknown), JOHN DOE RESOURCE WORKERS 1-50 (individually and as DYFS or DCPP resource workers, true names being unknown), JOHN DOE INVESTIGATIVE WORKERS 1-50 (individually and as | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MORRIS COUNTY<br><br>Docket No. MRS-L-000747-26<br><br>CIVIL ACTION<br><br>**SUMMONS** |

1

DYFS or DCPP investigative workers, true names being unknown), JOHN DOE SUPERVISORS 1-50 (individually and as DYFS or DCPP supervisors, true names being unknown), JOHN DOE MANAGERS 1-50 (individually and as DYFS or DCPP managers, true names being unknown), ABC CORPORATIONS 1-100 (true names being unknown), ABC EMPLOYEES (true names being unknown), ABC GOVERNMENT ENTITIES 1-100 (true identities being unknown), ABC GOVERNMENT EMPLOYEES 1-100 (in their individual capacities and as government employees 1-100),

Defendants.

THE STATE OF NEW JERSEY, TO:

**THE STATE OF NEW JERSEY DIVISION OF CHILD PROTECTION AND PERMANENCY f/k/a DIVISION OF YOUTH AND FAMILY SERVICES 50 E. STATE STREET TRENTON NJ 08625**

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided). A $175 filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN 971, Trenton, NJ 08625. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and

2

costs of suit.  If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529).  A list of these offices is provided.  If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A list of these numbers is also provided.

Dated: April 8, 2026        /s/ Michelle M. Smith

_____

Michelle M. Smith, Clerk
Superior Court of New Jersey

Name of defendant to be served: **THE STATE OF NEW JERSEY DIVISION OF CHILD PROTECTION AND PERMANENCY f/k/a DIVISION OF YOUTH AND FAMILY SERVICES**

Address for service:        **50 E. STATE STREET
TRENTON NJ 08625**

3

MRS-L-000747-26   03/30/2026 5·09:04 PM   Pg 1 of 26   Trans ID: LCV2026810134

*TIMOTHY L. DINAN (023232010)*
*LADDEY, CLARK & RYAN, LLP*
*Attorneys-at-Law*
*60 Blue Heron Road, Suite 300*
*Sparta, New Jersey 07871-2600*
*(973) 729-1880*
*Attorneys for Plaintiffs Jana Grace Rinaldi, f/k/a Jana Jackson f/k/a Jireh Woods and*
*C.R., a minor, by and through FRANCESCO RINALDI and KATHERINE RINALDI,*
*Guardians Ad Litem*

| | |
|---|---|
| JANA GRACE RINALDI, f/k/a JANA JACKSON f/k/a JIREH WOODS and C.R., a minor, by and through FRANCESCO RINALDI and KATHERINE RINALDI, Guardians Ad Litem | SUPERIOR COURT OF NEW JERSEY LAW DIVISION MORRIS COUNTY |
| | Docket No. |
| Plaintiff, | CIVIL ACTION |
| -vs- | **COMPLAINT AND JURY DEMAND** |
| THE STATE OF NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES, THE STATE OF NEW JERSEY DIVISION OF CHILD PROTECTION AND PERMANENCY f/k/a DIVISION OF YOUTH AND FAMILY SERVICES, IRMA AKCAY in her individual capacity and as a DYFS caseworker, ALISON CASSONE in her individual capacity and as a DYFS caseworker, KETTY WILLIAMS in her individual capacity and as a DYFS supervisor, JOHN JACKSON, CAROLYNE JACKSON, THE STATE OF NEW JERSEY INTERSTATE COMPACT ON THE PLACEMENT OF CHILDREN ADMINISTRATORS 1-50 (true names being unknown), JOHN DOE CASEWORKERS 1-50 (individually and as DYFS or DCPP caseworkers, true names being unknown), JOHN DOE RESOURCE WORKERS 1-50 (individually and as DYFS or DCPP resource workers, true names being unknown), JOHN DOE INVESTIGATIVE | |

1

WORKERS 1-50 (individually and as DYFS or DCPP investigative workers, true names being unknown), JOHN DOE SUPERVISORS 1-50 (individually and as DYFS or DCPP supervisors, true names being unknown), JOHN DOE MANAGERS 1-50 (individually and as DYFS or DCPP managers, true names being unknown), ABC CORPORATIONS 1-100 (true names being unknown), ABC EMPLOYEES (true names being unknown), ABC GOVERNMENT ENTITIES 1-100 (true identities being unknown), ABC GOVERNMENT EMPLOYEES 1-100 (in their individual capacities and as government employees 1-100),

Defendants.

Plaintiff, JANA GRACE RINALDI, an adult female, and C.R., a minor female through her guardians ad litem ("GALs"), all of whom reside in Morris County, New Jersey, by way of Complaint against Defendants, say.

## INTRODUCTION

1.     This action arises from horrific physical abuse that Plaintiff Jana Grace Rinaldi ( "Jana") and Plaintiff C.R. (collectively "Plaintiffs"), suffered for approximately two years from 2008 until 2010 while they were placed under the custody and care of Defendants John Jackson and Carolyne Jackson (collectively "Jacksons").

2.     Jana and C.R. were improperly and negligently placed with the Jacksons during that time because the State of New Jersey Division of Child Protection and Permanency f/k/a the Division of Youth and Family Services ("DCPP") and its employees, workers, supervisors, managers, agents and affiliates failed to adhere to the requirements of the Interstate Compact on the Placement of Children ("ICPC"), failed

2

MRS-L-000747-26   03/30/2026 5:09:04 PM   Pg 3 of 26   Trans ID: LCV2026810134

to properly assess and interview the Jacksons and inspect their residence before placing Jana and C.R. with the Jacksons, failed to properly investigate prior child welfare and/or child protection complaints against the Jacksons before and during Jana and C.R.'s placements with the Jacksons, and failed to properly supervise Jana and C.R. while in the care and physical custody of the Jacksons to ensure they were protected and adequately cared for.

3.      Shortly before Jana and C.R.'s placement with the Jacksons, Saint Clares Hospital ("St. Clares") andf Morristown Memorial Hospital ("MMH") treated the Jackson's other adopted son J.J. for Failure to Thrive ("FTT") and toxic levels of sodium the cause of which was inconclusive.

4.      A proper investigation and analysis of J.J.'s medical records should have revealed that the Jacksons were mistreating, abusing and/or neglecting J.J. but this analysis was not done, was ignored or was grossly incompetent, which resulted in (i) the Jacksons being licensed as foster/resource parents, and (ii) Jana and C.R. being placed under the Jacksons' custody and care despite J.J.'s suspicious death.

5.      This action seeks to remedy violations of Plaintiff's Federal constitutional rights, State constitutional rights and State civil rights; and to remedy tortious conduct committed by the State of New Jersey, its employees, agents and affiliates against the Plaintiff which is cognizable under the Tort Claims Act.

6.      This action also seeks to remedy tortious conduct by any individuals, pediatric medical providers, companies, employees, and professionals whose identities are not currently known that negligently or unlawfully provided or failed to provide

3

MRS-L-000747-26   03/30/2026 5:09:04 PM   Pg 4 of 26   Trans ID: LCV2026810134

pediatric medical care, child protection and child welfare services which caused Plaintiff significant, substantial and permanent injuries.

## PARTIES & JURISDICTION

7.      Jana Rinaldi is an adult female residing in New Jersey. Jana was born on April 1, 2006, as Jireh Ramona Woods in Indianapolis Indiana and transitioned between a series of foster homes before being placed within the custody of the Jacksons in June 2008 around the age of 2 years old in the Town of Dover, New Jersey.

8.      C.R. is a female who is 17 years and 11 months old residing in New Jersey. C.R. was born on April 7, 2008, in Indianapolis Indiana and was initially placed under the custody and care of her maternal aunt before quickly transitioning to the Jackson's care and custody around June 2008 at 2 months old to be with her older sister, Jana.

9.      Defendant Carolyne Jackson was born on September 27, 1977, and at all times relevant to this action resided in the Picatinny Arsenal U.S. Military base in, Dover, New Jersey, and upon information and belief her residence was located at 108 Farley Lane. After being evaluated by DCPP, Carolyne Jackson was permitted to take physical custody of Jana and C.R. starting in June 2008 and became Jana and C.R.'s legal adoptive mother on or around July 23, 2009, until her parental rights were terminated in August 2012.

10.     Defendant John Jackson was born May 4, 1975, and at all times relevant to this action maintained his primary family residence in the Picatinny Arsenal U.S. Military base in, Dover, New Jersey, and upon information and belief it was located at 108 Farley Lane. After being evaluated by DCPP, John Jackson was permitted to

4

MRS-L-000747-26   03/30/2026 5:09:04 PM   Pg 5 of 26   Trans ID: LCV2026810134

assume custody and caretaking responsibility for Jana and C.R. starting in June 2008 and became Jana and C.R.'s legal adoptive father on or around July 23, 2009, until his parental rights were terminated in August 2012. Mr. Jackson was a major in the U.S. Army for over fifteen years.

11.     The Jacksons were also adoptive parents to J J , born on or around May 13, 2005, in Oklahoma. J.J. came with the Jacksons to Dover, New Jersey, in or around October 2007 for Defendant John Jackson's military career.

12.     St. Clares provided pediatric medical care to J.J. in Dover or Denville New Jersey in March 2008 for an acute skin infection commonly referred to as Scalded Skin syndrome and then transferred J.J. to MMH for further consultation regarding J.J.'s diagnoses, which included FTT.

13.     MMH provided pediatric medical care to J.J. in its PICU unit in Morristown New Jersey in March 2008 and its staff worked on investigating the causal factors for J.J.'s FTT diagnosis. The investigation was inconclusive though records reveal the resident and attending physician were engaged in a differential diagnosis that included an interview with Defendant Carolyne Jackson which was done to try and rule out caregiver ignorance or neglect as a causal factor.

14.     J.J. passed away in the emergency department of St. Claires hospital in Dover, New Jersey, on May 8, 2008, while within the Jacksons' custody and under their care.

15.     DCPP placed Jana and C.R. into the Jacksons' custody on June 18, 2008, a little over a month after J.J.'s suspicious death and their adoption was finalized around July 2009 at which time Jana's name temporarily changed to Jana Jackson, until it was

5

finally changed to her current name around November 18, 2016; after the Jackson's parental rights were terminated with respect to both Jana and C.R. in August 2012.

16.    At all relevant times, Defendants State of New Jersey Department of Children and Families ("DCF"), DCPP, and The State of New Jersey Interstate Compact on the Placement of Children Administrators 1-50 ("ICPC Admin") (collectively the "DCF DEFENDANTS") with principal corporate offices in Trenton, New Jersey and Newark, New Jersey, and with local offices throughout the 21 counties in New Jersey, were the New Jersey government entities or government actors responsible for oversight and protection of the health, safety, welfare and permanency of children that are within the borders of New Jersey or whom are being considered for placement within the borders of New Jersey. The DCF DEFENDANTS do business throughout the State of New Jersey, including in Morris County.

17.    At all relevant times, Defendants IRMA AKCAY, ALISON CASSONE, JOHN DOE CASEWORKERS 1-50 ("CWs"), JOHN DOE RESOURCE WORKERS 1-50 ("RWs") and JOHN DOE INVESTIGATIVE WORKERS 1-50 ("IWs") (collectively the "CASEWORK DEFENDANTS") were employees or agents of the DCF DEFENDANTS or were otherwise acting under color of State law on behalf of the DCF DEFENDANTS and as part of the scope of their employment were directly responsible for the oversight and protection of Jana and C.R.'s health, safety, welfare and permanency both while Jana and C.R. were being placed into the Jackson's custody and while they actually were in their custody and under their care.

18.    At all relevant times, Defendants KETTY WILLIAMS and JOHN DOE SUPERVISORS 1-50 ("SUPs") were employees of the DCF DEFENDANTS or were

6

MRS-L-000747-26   03/30/2026 5:09:04 PM   Pg 7 of 26   Trans ID: LCV2026810134

otherwise acting under color of State law on behalf of the DCF DEFNEDANTS and as part of the scope of their employment were responsible to monitor, guide and evaluate the CASEWORK DEFENDANTS and ensure they were competently trained, and that they were properly and lawfully completing their casework, so that Jana and C.R.'s health, safety, welfare and permanency would be adequately protected.

19.    At all relevant times, Defendants JOHN DOE MANAGERS 1-50 ("MGRs") were employees of the DCF DEFENDANTS or were otherwise acting under color of State law on behalf of the DCF DEFENDANTS and as part of the scope of their employment were responsible to monitor, guide and evaluate the SUPs and ensure that the SUPs had the training and resources needed to properly and lawfully monitor the CASEWORK DEFENDANTS so that Jana and C.R.'s health, safety, welfare and permanency would be adequately protected.

20.    Pursuant to N.J.S.A. 59:8-8-4 to -8, Plaintiff sent an Initial Notice of Claim to the State of New Jersey, DCF and the DCF DEFENDANTS that was filed on or about July 23, 2018, and was received by the DCF DEFENDANTS on or about July 26, 2018, when Jana was 12 years old and C.R. was 10 years old. Six months has elapsed and the claims remain unsatisfied.

21.    This court has *in personam* and subject matter jurisdiction over the parties in so far as the Plaintiff was injured in New Jersey and Plaintiff's New Jersey constitutional rights were violated.

22.    Venue is proper in this county pursuant to Rule 4:3-2 because: (a) Plaintiff timely filed a tort claims notice, (b) more than 6 months has elapsed since the filing of

7

MRS-L-000747-26   03/30/2026 5:09:04 PM   Pg 8 of 26   Trans ID: LCV2026810134

the tort claims notice; and (c) the cause of action arose in the County of Morris, State of New Jersey.

## COUNT I
## FACTUAL BACKGROUND: THE PLACEMENT, ABUSE, NEGLECT AND DEATH OF J.J.

23.     Plaintiffs repeat the allegations above as if set forth fully herein.

24.     When moving to the Picatinny Arsenal U.S. Military base sometime around October 2007 the Jacksons brought with them their three biological children: John Jr. Jackson (DOB 12.26.1997), Cameron Jackson (DOB 4.22.1998), and Shavonne Jackson (DOB 12.12.2001) (collectively the "Biological Children").

25.     The Jackson's also brought with them their adopted son J.J. who was 2 years old at the time.

26.     In New Jersey, in December 2007, J.J. started receiving treatment at Denville Pediatrics and was seen directly by Dr. Scott Vergano from that office.

27.     In late March 2008 J.J. was diagnosed with and treated for a skin infection condition called Scalded Skin Syndrome by St. Clares.

28.     St. Clares transferred J.J. to MMH's Pediatric Intensive Care Unit ("PICU") where he was treated for the skin infection.

29.     On March 31, 2008, J.J.'s skin infection had mostly or fully resolved but J.J.'s PICU treatment team at MMH requested a consultation with then pediatric gastroenterology resident Dr. Jarrod Kucharski and his attending physician Dr. Nader Yousseff to investigate and complete a workup on J.J.'s FTT diagnosis (the "FTT Workup") because J.J. was under the 3rd percentile for weight.

MRS-L-000747-26   03/30/2026 5:09:04 PM   Pg 9 of 26   Trans ID: LCV2026810134

30.     As part of the FTT Workup Dr. Kucharski and Dr. Yousseff reviewed what medical records they could locate for J.J., including pediatric records from New Jersey and some limited birth records from Oklahoma, and they interviewed Defendant Carolyne Jackson regarding J.J.'s diet and weight.

31.     From the interview Dr. Kucharski learned that Defendant Carolyne Jackson was limiting J.J.'s bites at each meal to control his intake, even though she believed J.J. had been FTT since she had known him at 3 months old.

32.     The hospital FTT Workup was ultimately inconclusive.

33.     Just over a month later, on May 8, 2008, J.J. died at the St. Clares Emergency Room (ER) in Dover, New Jersey.

34.     That same day the St. Clares ER doctor reported the death to Dr. Krekamey Craig of Denville Pediatrics because Dr. Scott Vergane was on vacation at the time.

35.     The St. Clares ER doctor informed Dr. Craig that J.J. was possibly hospitalized due to a simple seizure, but the cause of J.J.'s death was ultimately unknown.

36.     Dr. Craig also spoke to the medical examiner's investigator on May 8, 2008, and requested an autopsy but this request was initially denied because the Jacksons refused.

37     On May 10, 2008, the medical examiner finally agreed to conduct an autopsy, but J.J.'s body had already been embalmed, and the autopsy was never completed because J.J. was cremated.

38. Dr. Craig was concerned that child abuse and neglect played a role in J.J.'s death and reported these concerns to the Morris County Prosecutor's Office by letter dated May 13, 2008.

39. Sometime in May 2008 the DCF DEFENDANTS opened an investigation into whether abuse or neglect was a factor in J.J.'s death.

40. This investigation was either never assigned a New Jersey Spirit ("NJS") ID number, it was under NJS Case ID# 10118094, it was under NJS Case ID# 12008334, or it was under a NJS Case ID# that does not appear in Jana and C.R.'s medical records or DCPP records.

41. The DCF DEFENDANTS closed the investigation into whether J.J. was abused or neglected shortly after his death, on or around May 23, 2008, finding that no abuse or neglect occurred and concluding that J.J. died of a seizure disorder, as was reported on his death certificate by the medical examiner.

42. At no point did the DCF DEFENDANTS ever re-open the investigation to follow-up on the concerns of Dr. Krekamey Craig and Denville Pediatrics or to follow-up on J.J.'s medical records from Oklahoma.

43. In 2008 the DCF DEFENDANTS and CASEWORK DEFENDANTS failed to obtain, adequately review and properly consider J.J.'s medical records from Oklahoma, from Denville Pediatrics, from St. Clares, and from MMH in their investigation into whether J.J. was abused and neglected.

44. In 2008 the SUPs and DEFENDANT KETTY WILLIAMS failed to monitor and guide the CASEWORK DEFENDANTS so that J.J.'s medical records were properly

10

obtained, adequately reviewed and properly considered in the investigation into whether J.J. was abused or neglected.

45.    In 2008 the MGRs failed to monitor and guide the SUPs and DEFENDANT KETTY WILLIAMS so that they would ensure that proper casework was done and J.J.'s medical records would be properly obtained, adequately reviewed and properly considered in the investigation into whether J.J. was abused or neglected.

46.    In 2008 the DCF DEFENDANTS and CASEWORK DEFENDANTS failed to properly and adequately interview the Jacksons, and their Biological Children, for the investigation into whether J.J. was abused and neglected.

47.    In 2008 the SUPs and DEFENDANT KETTY WILLIAMS failed to monitor and guide the CASEWORK DEFENDANTS to ensure the Jacksons, and their Biological Children, were properly interviewed for the investigation into whether J.J. was abused and neglected.

48.    In 2008 the MGRs failed to monitor and guide the SUPs and DEFENDANT KETTY WILLIAMS so that they would ensure that proper casework was done and the Jacksons, and their Biological Children, were properly and adequately interviewed for the investigation into whether J.J. was abused and neglected.

## COUNT II
### FACTUAL BACKGROUND: THE PLACEMENT OF JANA AND C.R. WITH THE JACKSONS AFTER J.J.'S DEATH

49.    Plaintiffs repeat the allegations above as if set forth fully herein.

50.    Jana and C.R.'s biological mother Brittany Woods was involved with the Indiana Department of Child Services for years and through that process was

11

MRS-L-000747-26   03/30/2026 5:09:04 PM   Pg 12 of 26   Trans ID: LCV2026810134

considering surrendering her parental rights in connection with Jana and C.R., in 2007 and 2008.

51.     Sometime around late 2007, or sometime in early 2008, with prompting from the Indiana Department of Child Services the DCF DEFENDANTS opened an ICPC supervision case to evaluate the Jacksons as a prospective placement for Jana and C.R. both of whom had resided with the Jacksons previously along with Ms. Woods in Indiana.

52.     Upon information and belief, the ICPC supervision case was opened in NJS under Case ID# 10118094 or it was opened under another NJS Case ID# that does not appear in Jana and C.R.'s medical records or DCPP records.

53.     Also in 2008 the DCF DEFENDANTS and CASEWORK DEFENDANTS were engaged in a home study and evaluation process with the Jacksons in an effort to get them licensed as foster parents or resource parents in New Jersey under NJS Case ID# 10102403 or NJS Case ID# 10118094.

54.     On or around June 18, 2008, Brittany Woods signed an identified surrender in Indiana allowing the Jacksons to adopt Jana and C.R. and they were placed into the Jacksons' custody in New Jersey around that time.

55.     On or around October 14, 2008, only 5 months after J.J.'s death, Defendant Irma Akcay and Defendant Alison Cassone completed a home study for the Jacksons that ultimately licensed them as foster or resource parents in New Jersey and enabled them to keep custody of Jana and C.R. while being supervised by the DCF DEFENDANTS.

12

MRS-L-000747-26   03/30/2026 5:09:04 PM   Pg 13 of 26   Trans ID: LCV2026810134

56.     The placement of Jana and C.R. with the Jacksons in or around June 2008 should have been done pursuant to an ICPC process between Indiana Department of Child Services and the DCF DEFENDANTS.

57.     The ICPC process for Jana and C.R. being placed in the Jacksons' custody in June 2008 was either improper or entirely disregarded and as a result none of the home study evaluations or licensing processes done by the CWs, RWs and CASEWORK DEFENDANTS in 2007, 2008 and 2009 properly or adequately considered J.J.'s death when evaluating if the Jacksons should be licensed or whether Jana and C.R. should be placed in their custody.

58.     The Jackson's adoption of Jana and C.R. was finalized in Indiana on July 23, 2009, and the DCF DEFENDANTS closed the Jackson's case on August 24, 2009.

59.     In 2007, 2008 and 2009 the DCF DEFENDANTS, RWs and CWs failed to obtain, adequately review and properly consider Jana, C.R. and J.J.'s medical records from Oklahoma, from Indiana, from Denville Pediatrics, from St. Clares, and from MMH and failed to review the prior investigation into J.J.'s death for their evaluation of whether the Jackson's should be licensed and awarded custody of Jana and C.R..

60.     In 2007, 2008 and 2009 the SUPs failed to monitor and guide the RWs and CWs to ensure that J.J.'s medical records and the investigation reports relating to his death were properly obtained, adequately reviewed and properly considered in their assessment of whether the Jackson's should be licensed and awarded custody of Jana and C.R..

61.     In 2007, 2008 and 2009 the MGRs failed to monitor and guide the SUPs so that they would ensure that proper casework was done and J.J.'s medical records

13

and the investigation reports relating to his death would be properly obtained, adequately reviewed and properly considered in their assessment of whether the Jackson's should be licensed and awarded custody of Jana and C.R..

62.     In 2007, 2008 and 2009 the DCF DEFENDANTS and CASEWORK DEFENDANTS failed to properly and adequately interview the Jacksons, and their Biological Children, about their family, history and J.J.'s death for the Home Studies and assessments done to determine whether the Jackson's should be licensed and awarded custody of Jana and C.R..

63.     In 2007, 2008 and 2009 the SUPs and DEFENDANT KETTY WILLIAMS failed to monitor and guide the CASEWORK DEFENDANTS to ensure the Jacksons, and their Biological Children, were properly interviewed about their family, history and J.J.'s death as part of the Home Studies and assessments done to determine if the Jackson's should be licensed and awarded custody of Jana and C.R.

64.     In 2007, 2008 and 2009 the MGRs failed to monitor and guide the SUPs and DEFENDANT KETTY WILLIAMS so that they would ensure that as part of proper casework the Jacksons, and their Biological Children, were properly and adequately interviewed about their family, history and J.J.'s death as part of the Home Studies and assessments done to determine if the Jackson's should be licensed and awarded custody of Jana and C.R..

65.     In 2007, 2008 and 2009 the DCF DEFENDANTS, SUPs, DEFENDANT KETTY WILLIAMS and MGRs failed to ensure adequate communication between the CASEWORK DEFENDANTS, CWs, IWs and RWs which caused the Jacksons' Biological Children to not be interviewed and caused J.J.'s death to be improperly

14

MRS-L-000747-26   03/30/2026 5:09:04 PM   Pg 15 of 26   Trans ID: LCV2026810134

overlooked and dismissed during the ICPC and licensing processes that awarded the Jacksons custody of Jana and C R..

66.     In 2007, 2008 and 2009 the CASEWORK DEFENDANTS intentionally or negligently avoided communication between CWs, IWs and RWs which caused the Jacksons' Biological Children to not be interviewed and caused J.J.'s death to be improperly overlooked and dismissed during the ICPC and licensing processes that awarded the Jacksons custody of Jana and C.R..

## COUNT III
## FACTUAL BACKGROUND: JANA AND C.R. ARE ABUSED AND NEGLECTED BY THE JACKSONS

67.     Plaintiffs repeat the allegations above as if set forth fully herein.

68.     While under the age of 5 and in the custody of the Jacksons from 2008 until 2010 Jana sustained various forms of neglect, abuse and excessive corporal punishment including assault with various implements, forced ingestion of spicy or unpleasant foods, forced ingestion of toxic levels of sodium, food and water depravation, delayed medical care and emotional cruelty.

69.     While under the age of 3, and in the custody of the Jacksons from 2008 until 2010, C.R. sustained various forms of neglect, abuse and excessive corporal punishment including assault, forced ingestion of spicy or unpleasant foods, forced ingestion of toxic levels of sodium, food and water depravation, delayed medical care and emotional cruelty to the point that C.R. was admitted to St. Clare's Hospital in Dover on April 15, 2010, for a high fever, lethargy, jerky head movements and risk of seizure.

70.     In January 2010 the Jacksons traveled from New Jersey to Indiana to visit relatives and while there C.R. was admitted to St. Vincent's Hospital in Indianapolis for

15

MRS-L-000747-26   03/30/2026 5:09:04 PM   Pg 16 of 26   Trans ID: LCV2026810134

dangerously high sodium levels, a staph infection and a yeast infection on her mouth that ultimately required part of her lip to be surgically removed.

71.    Sometime around April 16, 2010, New Jersey DCPP received a call from MMH that C.R. was again suffering from medical issues that were unexplained and rose to the level of abuse or neglect, including dangerously high sodium levels, severe malnutrition, MRSA, a severe staph infection, fractures of the left arm and a skull fracture.

72.    In response to the April 2010 call about C.R. from MMH DCPP opened up an investigation under NJS ID# 12013710 and conducted an emergency removal of all the Jacksons' children, placing C.R. with foster/resource parents Patricia and David K., and placing Jana with foster/resource parents Francesco Rinaldi and Katharine Rinaldi (collective the "RINALDIS"), whom eventually assumed permanent custody of Jana and C.R.

73.    Investigation ID# 12013710 ultimately concluded that the allegations of abuse and neglect against the Jacksons was substantiated.

74.    On August 22, 2012, the Honorable Michael Wright, J.S.C., entered an order terminating the Jacksons' parental rights as to Jana and C.R.

75.    On July 8, 2015, the Jacksons were convicted of both conspiracy to endanger the welfare of a child and multiple substantive counts of endangering the welfare of a child.

76.    On November 18, 2016, the Hon. Maritza Berdote Byrne, P.J.F.P. entered an order under FL-14-06-17 appointing the RINALDIS as Jana's Kinship Legal Guardians ("KLG") until the age of eighteen years old.

16

77.     Also on November 18, 2016, the Hon. Maritza Berdote Byrne, P.J.F.P. entered an order for Judgment of Adoption of C.R. by the RINALDIS.

## COUNT IV
## NEGLIGENCE AGAINST THE STATE OF NEW JERSEY, DCF DEFENDANTS, CASEWORK DEFENDANTS, SUPs and MGRs

78.     Plaintiffs repeat each and every allegation above as if set forth at length herein.

79.     Since approximately October 2007 the DCF DEFENDANTS, CASEWORK DEFENDANTS, SUPs and MGRs were aware of the Jacksons and were evaluating their suitability as a potential placement for Jana and C.R.

80.     Between the time the DCF DEFENDANTS first opened a case for the Jacksons and when they closed their investigation into J.J.'s death around May 23, 2008, the DCF defendants and the CASEWORK DEFENDANTS, particularly the RWs, CWs and their SUPs, should have interviewed the Jacksons, interviewed their Biological Children, completed a comprehensive review of all the children's medical records and as appropriate spoken with the Biological Children's and J.J.'s pediatricians.

81.     These interviews and medical record reviews were required under the New Jersey Department of Children and Families Child Protection and Permanency Policy Manual, Volume II and/or Volume IV or their then effective equivalents, but they either did not occur at all or were grossly inadequate which resulted in J.J.'s death and the abuse of the Biological Children not being properly considered when assessing if Jana or C.R. should be placed under the Jacksons' custody and care.

82.     These interviews and medical record reviews also should have occurred due to the circumstances of an ongoing ICPC process and the death of J.J., which

17

created a common law duty to complete them as a reasonable DCF or DCPP employee that was similarly situated would have.

83.   However, the interviews and medical record reviews either did not occur at all or were grossly inadequate which resulted in J.J.'s death and the abuse of the Biological Children not being properly considered when assessing if Jana or C.R. should be placed under the Jacksons' custody and care.

84.   Between the time the DCF DEFENDANTS first opened a case for the Jacksons and when Defendant Irma Akcay and Defendant Alison Cassone completed a Home Study of the Jackon Family around October 14, 2008, the DCF defendants and the CASEWORK DEFENDANTS, particularly the RWs, CWs and their SUPs, should have interviewed the Jacksons, interviewed their Biological Children, completed a comprehensive review of all the children's medical records and as appropriate spoken with the Biological Children's and J.J.'s pediatricians, including Dr. Krekamey Craig of Denville Pediatrics, and also including the medical examiner that evaluated J.J.'s death.

85.   These interviews and medical record reviews were required under the New Jersey Department of Children and Families Child Protection and Permanency Policy Manual, Volume II and/or Volume IV or their then effective equivalents.

86.   These interviews and medical record reviews also should have occurred due to the circumstances of an ongoing ICPC process and J.J.'s death, which created a common law duty to complete them as a reasonable DCF or DCPP employee would have.

87.   These interviews and medical record reviews should have been analyzed, explained and memorialized in Jana and C.R.'s Home Study that was completed by Irma

18

Akcay and Defendant Alison Cassone, and the SUPs and MGRs responsible for the study or studies should have ensured such analyses were incorporated therein, but the analyses either were omitted from the final reports or they were grossly inadequate, which resulted in J.J.'s death and the abuse of the Biological Children not being properly considered when assessing if Jana and/or C.R. should be placed under the Jacksons' custody and care.

88.     DEFENDANT KETTY WILLIAMS and the SUPs should have made sure the CASEWORK DEFENDANTS were adequately trained and possessed appropriate experience to complete the investigation into J.J.'s death and complete Jana and/or C.R.'s Home Study in October 2008, but the CASEWORK DEFENDANTS were not properly trained and did not have sufficient experience and so failed to properly consider J.J.'s death and the abuse of the Biological Children when assessing whether Jana or C.R. should be placed into or continue under the Jacksons' custody, care and guardianship from 2008 to 2010.

89.     Under docket FC-14-144-10, and any other FN or FL docket where Jana or C.R. were one of the NJS Participants identified, the DCF DEFENDANTS, CASEWORK DEFENDANTS, SUPs and MGRs were responsible to directly or indirectly through their supervision of the casework report to the appropriate courts the results of their investigation into J.J.'s death and the basis for their conclusion that Jana and C.R. should be placed with the Jacksons despite J.J.'s death, but this reporting to the courts either did not occur or was grossly inadequate.

90.     The DCF DEFENDANTS, CASEWORK DEFENDANTS, SUPs and MGRs owed Jana a common law duty to prepare, supervise and oversee their casework with

19

MRS-L-000747-26   03/30/2026 5:09:04 PM   Pg 20 of 26   Trans ID: LCV2026810134

sufficient clarity and competency to facilitate a proper judicial review of Jana's placements and they failed to satisfy this duty.

91.     This failed or inadequate casework and reporting to the court was done by the DCF DEFENDANTS, CASEWORK DEFENDANTS, SUPs and MGRs knowingly and/or in a grossly negligent manner so the courts' orders would not complicate Jana and/or C.R.'s placement with the Jacksons or require more work to be done by the CASEWORK DEFENDANTS, SUPs or MGRs.

92.     As a direct and proximate result of the foregoing breaches of duty by the DCF DEFENDANTS, CASEWORK DEFENDANTS, SUPs and MGRs, including negligent casework, negligent supervision, negligent management, negligent hiring and negligent training Jana and C.R. were abused and neglected by the Jacksons from June 2008 until April 2010, which included assault with various implements, forced ingestion of spicy or unpleasant foods, forced ingestion of toxic levels of sodium, food and water depravation, delayed medical care and emotional cruelty, which ultimately caused Jana and C.R. serious and permanent injuries including permanent loss of bodily functions, reduced earning capacity, mental anguish, and medical expenses in excess of $3,600.

93.     Defendant DCF and DCPP are vicariously liable for the foregoing wrongful acts of the CASEWORK DEFENDANTS, SUPs and MGRs—as agents, servants, employees and/or representatives of DCF and DCPP—but only to the extent their acts were within the scope of their employment or retention.

94.     The CASEWORK DEFENDANTS, SUPs and MGRs are individually liable to the extent any of their foregoing acts were outside the scope of their employment or retention by the DCF DEFENDANTS.

20

MRS-L-000747-26   03/30/2026 5:09:04 PM   Pg 21 of 26   Trans ID: LCV2026810134

WHEREFORE, Jana and C.R. demand judgment against the DCF DEFENDANTS, CASEWORK DEFENDANTS, SUPs and MGRs individually and/or jointly, for compensatory damages, interest, attorneys' fees, costs of suit and such other relief as the court deems just and equitable.

## COUNT V
## NEGLIGENT SUPERVISION, TRAINING AND HIRING BY DCF DEFENDANTS, MGRs AND SUPs

95.     Plaintiffs repeat each and every allegation above as if set forth at length herein.

96.     At all times relevant to this action DCF DEFENDANTS had a duty to properly hire, train, screen, retain and supervise their agents, servants, employees and/or representatives to ensure that they were competent, capable of properly competing investigative work and capable of properly completing casework consistent with applicable law, policies and professional standards to ensure the health, safety, welfare and protection of Jana and C.R..

97.     At all times relevant to this action SUPs and MGRs had a duty to report on and advocate for proper hiring, training, screening, retention, supervision and management of the CASEWORK DEFENDANTS to ensure that they were competent, capable of properly completing direct casework consistent with applicable law, policies and professional standards to ensure the health, safety, welfare and protection of Jana and C.R..

98.     At all times relevant to this action DCF DEFENDANTS, SUPs and MGRs were negligent and breached their aforesaid duty of care in failing to, directly or indirectly by reporting and advocating to senior personnel, properly hire, train, screen, retain,

21

supervise and manage employees, the CASEWORK DEFENDANTS, IRMA AKCAY in her individual capacity and ALISON CASSONE in her individual capacity.

99.    As a direct and proximate result of the foregoing breaches of duty by the DCF DEFENDANTS, SUPs and MGRs Jana and C.R. were abused and neglected by the Jacksons from June 18, 2008, until April 2010, which included assault with various implements, forced ingestion of spicy or unpleasant foods, forced ingestion of toxic levels of sodium, food and water depravation, delayed medical care and emotional cruelty, which ultimately caused Jana and C.R. serious and permanent injuries including permanent loss of bodily functions, reduced earning capacity, mental anguish, and medical expenses in excess of $3,600.

WHEREFORE, Jana and C.R. demand judgment against the DCF DEFENDANTS, SUPs, MGRs and KETTY WILLIAMS for compensatory damages, interest, attorney's fees, costs of suit and such other relief as the Court deems just and equitable.

## COUNT VI
## STATE AND FEDERAL CONSTITUTIONAL DUE PROCESS AND U.S. §1983 VIOLATIONS

100.    Plaintiffs repeat each and every allegation above as if set forth at length herein.

101.    At all times relevant to this action the DCF DEFENDANTS, CASEWORK DEFENDANTS, IWs, RWs and IWs were acting under color of New Jersey State law as employees and/or agents of the DCF DEFENDANTS.

102.    During the ICPC process, when being evaluated for placement under the Jacksons' custody, care and supervision and when actually in the placement with the

22

MRS-L-000747-26   03/30/2026 5:09:04 PM   Pg 23 of 26   Trans ID: LCV2026810134

Jacksons Jana and C.R. both had a substantive federal constitutional right to safety, bodily integrity and freedom from state-created dangers.

103.   The DCF DEFENDANTS affirmatively exercised their authority to place Jana and C.R. under the custody, care and supervision of the Jacksons.

104.   Due to the ICPC process, the death of J.J., and the Home Study completed in 2008, at the time Jana and C.R. were placed with the Jacksons the DCF DEFENDANTS and CASEWORK DEFENDANTS knew or should have known that the Jacksons posed a substantial and specific risk of harm to Jana and C.R.

105.   Despite knowledge that J.J. had died under the custody, care and supervision of the Jacksons the DCF DEFENDANTS and CASEWORK DEFENDANTS deliberately and intentionally or with indifference licensed the Jacksons and placed Jana and C.R. with the Jacksons despite failing to conduct all necessary interviews and medical record reviews when investigating J.J.'s death and when completing Jana and C.R.'s Home Study, all of which was a violation of Jana and C.R.'s federal constitutional rights to freedom from state-created dangers and which was a violation of U.S.C. §1983.

106.   The harm Jana and C.R. suffered, being abused and neglected by the Jacksons, was a clearly foreseeable result of the DCF DEFENDANTS and CASEWORK DEFENDANTS failing to properly investigate and consider J.J.'s death.

107.   During the ICPC process, when being evaluated for placement under the Jacksons' custody, care and supervision and then while actually in the placement with the Jacksons Jana and C.R. had a procedural due process right to a fundamentally fair decision-making process and procedures that do not arbitrarily or capriciously ignore critical safety information.

108.   The DCF DEFENDANTS and CASEWORK DEFENDANTS violated Jana and C.R.'s procedural constitutional due process rights and violated U.S.C. §1983 when they failed to provide a fundamentally fair process and were arbitrary and capricious in their rushed closure of the investigation into J.J.'s death, rushed completion of Jana and C.R.'s Home Study and rushed evaluation and licensing of the Jacksons without completing all necessary interviews and medical record reviews.

109.   Jana and C.R. also had a right to personal safety and bodily integrity and to be free from arbitrary and capricious government action under Article I, Paragraph 1, of the New Jersey State Constitution and that right is broader and more expansive than their rights under the U.S. Constitution.

110.   The arbitrary, capricious, deliberate and unconstitutional failure of the DCF DEFENDANTS and CASEWORK DEFENDANTS to complete the necessary medical record reviews and interviews in this case as part of the ICPC, Home Study and adoption processes violated Jana and C.R.'s rights under the New Jersey Constitution also.

111.   As a direct and proximate result of the DCF DEFENDANTS and CASEWORK DEFENDANTS unconstitutional conduct Jana and C.R. suffered horrific physical abuse and neglect by the Jacksons which resulted in permanent physical injuries and ongoing substantial emotional pain, suffering, loss of enjoyment of life, reduced earning capacity, and significant medical costs and specialized care costs in the past, present and future.

WHEREFORE, Jana and C.R. demands judgment against the DCF DEFENDANTS and CASEWORK DEFENDANTS for compensatory damages, punitive

24

damages, interest, attorney's fees, costs of suit and such other relief as the Court deems just and equitable.

**LADDEY, CLARK & RYAN, L.L.P.**
Attorneys for Plaintiffs

Dated: March 30, 2026                    By:_____
                                          Timothy E. Dinan Esq.

## DESIGNATION OF TRIAL COUNSEL

### TO: ASSIGNMENT JUDGE

In accordance with Rule 4 25-4, you are hereby notified that Timothy E. Dinan, Esq., of the law offices of Laddey, Clark & Ryan, L.L.P., is assigned to try this case.

### CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to Rule 4:5-1, I hereby certify that I have no knowledge of any other pending actions or proceedings concerning the subject matter of this action. It is not anticipated at this time that there is any other party who should be joined in this action.

### DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

### DEMAND FOR ANSWERS TO INTERROGATORIES

Plaintiffs hereby demand that defendants provide answers to Form Interrogatories as provided by the New Jersey Court Rules.

25

MRS-L-000747-26   03/30/2026 5:09:04 PM   Pg 26 of 26   Trans ID: LCV2026810134

## DEMAND FOR PRODUCTION

Plaintiffs hereby demands that Defendants DCPP, DCF, THE STATE OF NEW JERSEY, ABC CORPORATIONS 1-10 (true names being unknown), and JOHN DOES 1-10 (true names being unknown) furnish copies (electronic (if available) with metadata (if available)) of their files (including but not limited to any medical records, reports, photographs, videos, audio recordings, internal emails, memos, pleadings, transcripts, orders, texts, notes, notices, and correspondence) pertaining to Plaintiffs, as permitted by Rule 4:18-1, et seq. Should a right of privilege be asserted regarding the production of any of the above, please provide a privilege log.

## DEMAND FOR INSURANCE AGREEMENTS

Plaintiffs hereby demand that Defendants furnish copies of any and all declaration pages that were or may have been in force on or about January 16, 2009, as permitted by Rule 4:10-2(b).

**LADDEY, CLARK & RYAN, L.L.P.**
Attorneys for Plaintiffs

Dated: March 30, 2026          By._____

Timothy E. Dinan, Esq.

26

MRS-L-000747-26   03/30/2026 5:09:04 PM   Pg 1 of 2   Trans ID: LCV2026810134

# Civil Case Information Statement

## Case Details: MORRIS | Civil Part Docket# L-000747-26

**Case Caption:** RINALDI JANA  VS THE STATE OF NEW JER SEY DEPAR

**Case Initiation Date:** 03/30/2026

**Attorney Name.** TIMOTHY EDWARD DINAN

**Firm Name·** LADDEY CLARK & RYAN, LLP

**Address** 60 BLUE HERON RD SUITE 300

SPARTA NJ 078712800

**Phone.** 9737291880

**Name of Party:** PLAINTIFF   JANA G RINALDI

**Name of Defendant's Primary Insurance Company**

(if known)  Unknown

**Case Type** PERSONAL INJURY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending.** NO

**If yes, list docket numbers.**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** YES

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by. JANA G RINALDI?** NO

**Are sexual abuse claims alleged by. C. R.?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Other(explain)   Custodial

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
   **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** YES  **Consumer Fraud?** NO  **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1.38-7(b)

03/30/2026
Dated

/s/ TIMOTHY EDWARD DINAN
Signed

MRS-L-000747-26   03/30/2026 5:09:04 PM   Pg 2 of 2   Trans ID: LCV2026810134

MRS-L-000747-26   03/31/2026 5:13:22 AM   Pg 1 of 1   Trans ID: LCV2026811662

MORRIS COUNTY SUPERIOR COURT
PO BOX 910
MORRISTOWN        NJ 07963

                                        TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (862) 397-5700
COURT HOURS  8:30 AM - 4:30 PM

                        DATE:   MARCH 30, 2026
                        RE:     RINALDI JANA   VS THE STATE OF NEW JER SEY DEPAR
                        DOCKET: MRS L -000747 26

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

     DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON VIJAYANT PAWAR

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM    001
AT:  (862) 397-5700 EXT 75351.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                        ATTENTION:
                              ATT: TIMOTHY E. DINAN
                              LADDEY CLARK & RYAN, LLP
                              60 BLUE HERON RD SUITE 300
                              SPARTA         NJ 07871-2800

ECOURTS

COUNTY LAWYER REFERRAL/LEGAL SERVICES CONTACT INFORMATION

| | | |
|---|---|---|
| New Jersey Bar Association<br>Lawyer Referral Service<br>(732)249-5000<br><br>Legal Services of New Jersey, Inc.<br>(908)572-9100 | Gloucester County<br>Gloucester County Bar Association<br>Lawyer Referral Service<br>(856)848-4071<br>*Regional Legal Services<br>(856)848-5360 | Passaic County<br>Passaic County Bar Association<br>Lawyer Referral Service<br>(973)278-9223<br>Passaic County Legal Aid<br>(973)523-2900 |
| Atlantic County<br>Atlantic County Bar Association<br>Lawyer Referral Service<br>(609)345-3444<br>Cape-Atlantic Legal Services<br>(609)348-4200 | Hudson County<br>Hudson County Bar Association<br>Lawyer Referral Service<br>(201)798-2727<br>Hudson County Legal Services<br>(201)792-6363 | Salem County<br>Salem County Bar Association<br>Lawyer Referral Service<br>(856)935-5629<br>*Regional Legal Services<br>(856)496-4570 |
| Bergen County<br>Bergen County Bar Association<br>Lawyer Referral Service<br>(201)488-0044<br>Bergen County Legal Services<br>(201)487-2166 | Hunterdon County<br>Hunterdon County Bar Association<br>Lawyer Referral Service<br>(908)200-7822<br>Hunterdon County Legal Services<br>(908)782-7979 | Somerset County<br>Somerset County Bar Association<br>Lawyer Referral Service<br>(908)685-2323<br>Somerset-Sussex Legal Services<br>(908)231-0840 |
| Burlington County<br>Burlington County Bar Association<br>Lawyer Referral Service<br>(609)261-4862<br>*Regional Legal Services<br>(609)261-1088 | Mercer County<br>Mercer County Bar Association<br>Lawyer Referral Service<br>(609)585-6200<br>Legal Aid Society-Mercer County<br>(609)695-6249 | Sussex County<br>Sussex County Bar Association<br>Lawyer Referral Service<br>(973)267-5882<br>Somerset-Sussex Legal Services<br>(973-383-7400 |
| Camden County<br>Camden County Bar Association<br>Lawyer Referral Service<br>(856)482-0618<br>*Regional Legal Services<br>(856)964-2010 | Middlesex County<br>Middlesex County Bar Association<br>Lawyer Referral Service<br>(732)828-0053<br>Middlesex County Legal Services<br>(732)828-3433 | Union County<br>Union County Bar Association<br>Lawyer Referral Service<br>(908)353-4715<br>Union County Legal Services<br>(908)354-4340 |
| Cape May County<br>Cape May County Bar Association<br>Lawyer Referral Service<br>(609)463-0313<br>Cape-Atlantic Legal Services<br>(609)465-3001 | Monmouth County<br>Monmouth County Bar Association<br>Lawyer Referral Service<br>(732)431-5544<br>Ocean-Monmouth Legal Services<br>(732)414-6750 | Warren County<br>Warren County Bar Association<br>Lawyer Referral Service<br>(908)387-1835<br>Warren County Legal Services<br>(908)475-2010 |
| Cumberland County<br>Cumberland County Bar Assoc<br>Lawyer Referral Service<br>(856)696-5550<br>Legal Aid Society<br>(856)691-0494 | Morris County<br>Morris County Bar Association<br>Lawyer Referral Service<br>(973)267-5882<br>Legal Aid Society of Morris<br>(973)285-6911 | |
| Essex County<br>Essex County Bar Association<br>Lawyer Referral Service<br>(973)622-6204<br>Essex County Legal Aid Assoc<br>(973)622-0063 | Ocean County<br>Ocean County Bar Association<br>Lawyer Referral Service<br>(732)431-5544<br>Ocean-Monmouth Legal Services<br>(732)608-7794 | * Camden Regional Legal Services,<br>Inc serves Burlington, Cumberland,<br>Gloucester and Salem Counties |

# EXHIBIT-B

| | | |
|---|---|---|
| JANA GRACE RINALDI, f/k/a JANA JACKSON f/k/a JIREH WOODS and C.R., a minor, by and through FRANCESCO RINALDI and KATHERINE RINALDI, Guardians Ad Litem | Plaintiff | Superior Court of New Jersey Law Division Morris County Docket Number: MRS-L-000747-26 |
| vs. | | |
| THE STATE OF NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES, ET AL. | Defendant | |

**Superior Court of New Jersey**
Law Division
Morris County
Docket Number: MRS-L-000747-26

## AFFIDAVIT OF SERVICE

(For Use by Private Service)

STS2026024332

Cost of Service pursuant to R. 4:4-3(c)

$_____

**Person to be served** (Name & Address):
THE STATE OF NEW JERSEY DEPARTMENT OF CHILDREN AND FAMILIES (Via Electronic Service)
C/O OFFICE OF THE ATTORNEY GENERAL DISTRICT OF NEW JERSEY
25 MARKET STREET
TRENTON, NJ 08625

**Attorney:**
Timothy Dinan
Laddey, Clark & Ryan

**Papers Served:** Summons, Complaint, Certification Pursuant to Rule 4:5-1, Demand For Trial By Jury, Demand for Answers to Interrogatories, Demand for Production, Demand For Insurance Agreements, CIS, Track Assignment Notice and Lawyers Referral List

**Service Data:**

Served Successfully __X__   Not Served_____   Date: 4/24/2026_____   Time: 2:06 pm___   Attempts:_____

_____ Delivered a copy to him / her personally

_____ Left a copy with a competent household member over 14 years of age residing therein

___X___ Left a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc.

Name of Person Served and relationship / title:

Nicole Paulus-Delarosa (Via Electronic Service)____

Authorized Agent_____

**Description of Person Accepting Service:**

Sex: -____   Age: N/A___   Height: N/A___   Weight: N/A___   Skin Color: N/A_____   Hair Color: N/A_____

**Comments or Remarks:**
SIGNED ACKNOWLEDGEMENT OF SERVICE ATTACHED.

**Server Data:**

To Be Used Where Electronic Signature Not Available
Served Data: Subscribed and Sworn to before me on _____ 2026 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

HelloSign Approved E-Signature

I, Sharon McCabe Villa, was at the time of service a competent adult not having a direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

04 / 26 / 2026

_____
Signature of Process Server          Date

STATUS, L.L.C.
PO Box 370
Bayville, NJ 08721
(908) 688-1414
Our Job Serial Number: STS-2026024332

Doc ID: 5867f1fe557bb77e0092ca221b16d09812eacb19

MRS-L-000747-26  04/27/2026 12:57:13 PM  Pg 2 of 2  Trans ID: LCV20261134520

| | |
|---|---|
| Jana Grace Rinaldi, <br><br> Plaintiff(s) <br> vs. <br> The State of New Jersey Dept of <br> Children and Families et al <br><br> Defendants(s) | Superior Court of New Jersey <br><br> Law Division <br><br> Morris County <br> Civil Action <br><br> Docket No.: MRS-L-747-26 <br><br> **ACKNOWLEDGMENT OF SERVICE** |

## SERVICE OF THE WITHIN:

## FORECLOSURE DOCUMENTS:

☐ Summons, Complaint in Foreclosure

☐ Summons, Amended Complaint in Foreclosure

☐ Summons, 2nd Amended Complaint in Foreclosure

☐ Summons, 3rd Amended Complaint in Foreclosure

☐ Notice of Intent, Order to Show Cause, Verified Complaint

☐ Notice of Intent, Order to Show Cause, Amended Verified Complaint

☐ Other:_____

## NON FORECLOSURE DOCUMENTS:

☒ Summons, Complaint

☐ Summons, Amended Complaint

☐ Summons, 2nd Amended Complaint

☐ Summons, 3rd Amended

☐ Order to Show Cause, Complaint in

☐ Subpoena

☐ Other:_____

Hereby acknowledged on this_____ day of

Nicole Paulus-delaRosa

Digitally signed by Nicole Paulus-delaRosa
Date: 2026.04.24 14:05:36 -04'00'

By:_____

Attorney's Name  or Authorized Person Accepting Service (print name & Signature)

Accepting on behalf of Defendant(s) Name: The State of New Jersey Dept of Children and Families

*Name of Defendant accepting on behalf of  (must be written on above lines)*

*All information must be filled in.*

24332

JANA GRACE RINALDI, f/k/a JANA     Plaintiff
JACKSON f/k/a JIREH WOODS and
C.R.,
a minor, by and through FRANCESCO
RINALDI and KATHERINE RINALDI,
Guardians Ad Litem
           vs.
THE STATE OF NEW JERSEY     Defendant
DEPARTMENT OF CHILDREN AND
FAMILIES, ET AL.

**Person to be served** (Name & Address):
THE STATE OF NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY F/K/A DIVISION OF
YOUTH AND FAMILY SERVICES (Via Electronic Service)
C/O OFFICE OF THE ATTORNEY GENERAL DISTRICT OF
NEW JERSEY
25 MARKET STREET
TRENTON, NJ 08625

**Attorney:**
Timothy Dinan
Laddey, Clark & Ryan

Superior Court of New Jersey
Law Division
Morris County
Docket Number: MRS-L-000747-26

## AFFIDAVIT OF SERVICE

(For Use by Private Service)

STS2026024331

Cost of Service pursuant to R. 4:4-3(c)

$ _____

**Papers Served:** Summons, Complaint, Certification Pursuant to Rule 4:5-1, Demand For Trial By Jury, Demand for Answers to Interrogatories, Demand for Production, Demand For Insurance Agreements, CIS, Track Assignment Notice and Lawyers Referral List

**Service Data:**

Served Successfully __X__    Not Served_____    Date: _4/24/2026_____    Time: _2:07 pm___      Attempts:_____

_____ Delivered a copy to him / her personally

_____ Left a copy with a competent household
member over 14 years of age residing
therein

__X__ Left a copy with a person authorized to
accept service, e.g. managing agent,
registered agent, etc.

Name of Person Served and relationship / title:

_Nicole Paulus-Delarosa (Via Electronic Service)_____

_Authorized Agent_____

**Description of Person Accepting Service:**

Sex: _-____   Age: _N/A__   Height: _N/A___   Weight: _N/A__   Skin Color: _N/A_____    Hair Color: _N/A_____

**Comments or Remarks:**
SIGNED ACKNOWLEDGEMENT OF SERVICE ATTACHED.

**Server Data:**

To Be Used Where Electronic Signature Not Available
Served Data: Subscribed and Sworn to before me on
_____2026 by the affiant who is personally known to
me.

_____
NOTARY PUBLIC

HelloSign Approved E-Signature

I, Sharon McCabe Villa, was at the time of service a
competent adult not having a direct interest in the
litigation. I declare under penalty of perjury that the
foregoing is true and correct.

           04 / 26 / 2026
_____
Signature of Process Server        Date

STATUS, L.L.C.
PO Box 370
Bayville, NJ 08721
(908) 688-1414
Our Job Serial Number: STS-2026024331

Doc ID: 8dd864e746171f8099cee4c05681c65ddf996ec8

Jana Grace Rinaldi,

**Superior Court of New Jersey**

_Law_ Division

_Morris_ County

Civil Action

Plaintiff(s)
vs.

The State of New Jersey Dept. of Children and Families

Docket No.: _MRS-L 747 26_

**ACKNOWLEDGMENT OF SERVICE**

Defendants(s)

SERVICE OF THE WITHIN:

## FORECLOSURE DOCUMENTS:

☐ Summons, Complaint in Foreclosure

☐ Summons, Amended Complaint in Foreclosure

☐ Summons, 2nd Amended Complaint in Foreclosure

☐ Summons, 3rd Amended Complaint in Foreclosure

☐ Notice of Intent, Order to Show Cause, Verified Complaint

☐ Notice of Intent, Order to Show Cause, Amended Verified Complaint

☐ Other:_____

## NON FORECLOSURE DOCUMENTS:

☒ Summons, Complaint

☐ Summons, Amended Complaint

☐ Summons, 2nd Amended Complaint

☐ Summons, 3rd Amended

☐ Order to Show Cause, Complaint in

☐ Subpoena

☐ Other:_____

Nicole Paulus-delaRo sa — Digitally signed by Nicole Paulus-delaRosa Date: 2026.04.24 14:06:26 -04'00'

Hereby acknowledged on this_____ day of _____, 2026

By:_____

Attorney's Name  or Authorized Person Accepting Service (print name & Signature)

Accepting on behalf of Defendant(s) Name: The State of New Jersey
Division of Child Protection and Permanency F/K/A Division of Youth and Family Services
_Name of Defendant accepting on behalf of  (must be written on above lines)_

_**All information must be filled in.**_

24331