

**State of New Jersey**
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
25 Market Street
Trenton, NJ 08625

MIKIE SHERRILL
*Governor*
DR. DALE G. CALDWELL
*Lt. Governor*

JENNIFER DAVENPORT
*Attorney General*
MICHAEL C. WALTERS
*Director*

July 24, 2026

***Via CM/ECF***
Hon. Jamel K. Semper, U.S.D.J.
Martin Luther King Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

>   Re:   **Rinaldi v State of New Jersey Dept. of Children & Families, et al.**
>   **Civil Action No.: 2:20-cv-18246 (JKS-SDA)**
>
>   **Letter Brief in Support of a Motion to Partially Dismiss the Complaint Pursuant to Rule 12(b)(6)**
>   **Motion Date: August 17, 2026**

Dear Judge Semper:

This office represents the State of New Jersey Department of Children and Families ("DCF"), the State of New Jersey Division of Child Protection and Permanency ("DCP&P"), Ketty (Catherine) William and Irma Akcay, (collectively "State Defendants"), in the above entitled matter. Please accept this letter brief, in lieu of a more formal submission, in support of a motion under Fed. R. Civ. P. 12(b)(6), to partially dismiss the complaint as it relates to State and federal constitutional claims against DCF and DCP&P, in "Count VI" of the Complaint, for



25 Market Street • TELEPHONE: (609) 376-2440 • FAX: (609) 777-3607
*New Jersey Is An Equal Opportunity Employer • Printed on Recycled Paper and Recyclable*

July 24, 2026
Page 2

failure to state a claim upon which relief can be granted.[1]

## **PRELIMINARY STATEMENT**

On March 30, 2026, Plaintiffs, Jana Grace Rinaldi and C.R., by and through Francesco Rinaldi and Katherine Rinaldi, Guardians Ad Litem, ("Plaintiffs"), brought suit against the State Defendants in State Court, Morris County, claiming Jana Grace Rinaldi and C.R. suffered horrific physical abuse for approximately two years from 2008 to 2010, while they were placed in the custody of John and Carolyne Jackson. They claim DCPP and its affiliates failed to adhere to the requirements of the Interstate Compact on the Placement of Children (ICPC), failed to properly assess and interview the Jacksons and inspect their residence before placing Jena and C.R. with the Jacksons, failed to investigate prior complaints of abuse against the Jacksons before placing Jena and C.R. with them, and failed to properly supervise Jena and C.R. while they were in the Jacksons' care to ensure their adequate care. [2]

---

[1] Although Alison Cassone is listed as a Defendant and has been served, this office is not yet in receipt of her request for legal representation. Should she submit a request, it will be processed and reviewed to determine if representation is appropriate.

[2] The Interstate Compact on the Placement of Children (ICPC) is administered by the Interstate Services Officer within DCF. DCF manages the safe, legal and regulated placement of children across state lines for adoption, foster care, or with relatives

Based on these allegations, Plaintiff asserted various negligence claims in Counts one through five of the Complaint, including claims for negligent supervision, training and hiring. In Count six, Plaintiffs asserted state and federal constitutional due process claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J. Stat. Ann. 10:6-1 to -2 ("NJCRA"), against DCF and DCP&P. However, the state and federal constitutional claims against DCF and DCP&P should be dismissed with prejudice because State agencies are arms of the State and are not "person[s] subject to suit under the NJCRA or § 1983.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY[1]

### a. Allegations in the Complaint

Plaintiffs claim the incident occurred while Defendant John Jackson was an Army Major stationed at Picatinny Arsenal U.S. Military base in Dover. Plaintiffs claim Defendant Carolyne Jackson was permitted to take physical custody of Jena and C.R. in 2008 and became their legal adoptive mother until her parental rights were terminated in August 2012. (*See* Exhibit-A, Complaint, ¶¶ 9-19). Plaintiff claims further the Jacksons were adoptive parents of other children, namely J.J. who came with them to Dover, but later passed away in the emergency room in Dover in 2008, while still within the custody of the Jacksons. *Id.* Notwithstanding J.J.'s

---

[1] These sections are combined for purposes of brevity and the Court's convenience.

suspicious death, Plaintiff claims, DCPP placed Jena and C.R. in their custody. *Id.* Plaintiffs also claim the State Defendants failed to properly investigate the circumstances surrounding J.J.'s death, and when the medical examiner finally agreed to conduct an autopsy, it could not be completed because J.J.'s body was cremated. *Id.* at ¶¶ 36-37.

Regarding specific allegations related to Jana and C.R., Plaintiff claims while Jana was under the age of 5, and C.R. was under the age of 3 and in the Jackson's custody from 2008 to 2010, they sustained various forms of neglect, abuse and excessive corporal punishment, including assault with various instruments, forced ingestion of spicy or unpleasant foods, forced ingestion of toxic levels of sodium, food and water deprivation, delayed medical care and emotional cruelty. *Id.* at ¶¶ 68-69. Plaintiff claims further that C.R. was admitted to St. Clare's Hospital in Dover in April 2010 for high fever, lethargy, jerky head movements and risk of seizure. C.R. was admitted to the hospital again, plaintiff claims, while the Jacksons were visiting relatives in Indianapolis. *Id.* at ¶¶ 69-72. While there, Plaintiff claims, he suffered dangerously high levels of sodium, and staph and yeast infections on her mouth that ultimately required part of her lip to be surgically removed. *Id.* at ¶ 70.

Plaintiff claims in response to a call about Jena and C.R., DCPP opened an investigation around April 2010, and conducted an emergency removal of all of the

Jacksons' children, placing Jana and C.R. with Francesco and Katharine Rinaldi, whom eventually assumed permanent custody of them. *Id.* at ¶¶ 72-73. According to Plaintiff, the investigation substantiated the allegations of abuse against the Jacksons that resulted in their conviction in July 2015, for conspiracy to endanger the welfare of a child and multiple substantive counts of endangering the welfare of a child. *Id.* at ¶¶ 74-76. The Rinaldis were appointed legal guardians of Jana and C.R. until they reached the age of 18. Jana Rinaldi is now an adult female residing in New Jersey. *Id.* As of the filing of the Complaint, C.R. was 17 years and 11 months old, also residing in New Jersey. *Id.*

### b.  Summary of the Causes of Action

While not clear, most of the causes of action, except Count Six, appear to be based on claims of  negligence related to the placement, abuse, neglect and the alleged inadequate investigation of the incident, in addition to negligent supervision.

**Count One**:

Plaintiffs claim the DCF Defendants opened an investigation into JJ's abuse and neglect to determine if it was a factor in his death, but closed the investigation, finding no abuse. *Id.* at ¶¶ 24-48. They claim DCPP and the individual Defendants failed to obtain, adequately review and properly consider JJ's medical records from Oklahoma and St. Clare Hospital in their investigation. *Id.* Plaintiff also claims Supervisory Defendant Williams failed to monitor and guide the caseworker

defendants to ensure the Jacksons did not abuse their biological children. *Id.*

**Count Two:**

Plaintiffs claim 5 months after JJ's death, the individual State Defendants completed a home study for the Jacksons and ultimately licensed them as foster parents that allowed them to keep custody of Jana and C.R. Plaintiff claims the placement should have been done pursuant to the Interstate Compact on the Placement of Children between the States of Indiana and New Jersey, but that was not done. *Id.* at ¶¶ 50-66. Plaintiffs claim following Jana and C.R.'s placement, the State Defendants failed to properly interview, monitor and investigate the Jacksons, resulting in horrific abuses against them. *Id.* at ¶¶ 62-66.

**Count Three**

Plaintiffs repeated their allegations of abuse against Jana and C.R., claiming while they were five and three years of age respectively, they sustained various forms of neglect, abuse and excessive corporal punishment, including assault with various instruments, forced ingestion of spicy or unpleasant foods, forced ingestion of toxic levels of sodium, food and water deprivation and delayed medical care. *Id.* at ¶¶ 68-73. Plaintiffs also repeated the fact that, after receiving a report of the abuse in 2010, DCPP investigated the allegations that substantiated charges of abuse against the Jacksons, resulting in their criminal conviction. *Id.* at ¶¶ 72-75.

**Count Four:**

Plaintiffs claim since October 2007 the State Defendants were aware of the Jacksons and were evaluating their suitability as to a potential placement of Jana and C.R. *Id.* at ¶¶ 79-83. Plaintiff claims from the date of opening the case to determine the Jackson' suitability, to the date of JJ's death, the State Defendants should have interviewed the Jacksons and their biological children and reviewed the appropriate medical records. *Id.* Had they done so, Plaintiff claims, which were required by DCPP policy manual, Jana and C.R. would not have been placed with the Jacksons. Plaintiffs claim further that Defendant Williams failed to adequately train the casework defendants, which resulted in JJ's death and caused a flawed home study that failed to take JJ's death and the abuse of the Jackson's biological children into account before placing Jana and C.R. with the Jacksons. *Id.* at ¶¶ 84-91.

**Count Five:**

Plaintiffs claim the supervisory DCF Defendants were negligent and breached their duty of care by failing to properly hire, train, screen, retain, supervise and manage employees and caseworkers, resulting in JJ's death and horrific abuses against Jana and C.R. *Id.* at ¶¶ 96-99.

**Count Six:**

Plaintiffs claim while being evaluated for placement with the Jacksons, and

when actually in placement with them, Jana and C.R. had a substantive federal constitutional right to safety and bodily integrity and freedom from state-created danger. *Id.* at ¶¶ 102-109. Plaintiff claims further that despite knowledge of JJ's death, the State Defendants deliberately and with indifference, licensed the Jacksons and placed Jama and C.R. with them, despite failing to conduct all necessary interviews, medical records evaluation and an adequate home study, which was a violation of Jana and C.R.'s federal constitutional rights to freedom from state-created danger. *Id*.

### c.  Removal to Federal Court

On May 19, 2026, the State Defendants removed this case to this Court from the Superior Court of New Jersey, Law Division, Morris County. (See ECF No. 1). On July 7, 2026, the Court granted the State Defendants' request for a second extension to July 24, 2026, in which to answer, move or otherwise respond to the Complaint. (ECF No. 6). The State Defendants now move to partially dismiss the Complaint pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

### **STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."

July 24, 2026
Page 9

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that simply offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." *Id.*

Under the *Iqbal/Twombly* pleading framework, a district court should undertake a three-prong analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2009). First, the court should "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* Next, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*; *Twombly*, 550 U.S. at 555 (holding that "[f]actual allegations must be enough to raise a right to relief above the speculative level"). Finally, when a plaintiff's complaint contains "well-pleaded factual allegations," the allegations should be presumed veracious, and the court should ascertain whether they "plausibly give rise to an entitlement for relief." *Malleus*, 641 F.3d at 563. This finding requires more than a mere allegation of an entitlement to relief or demonstration of the "mere possibility of misconduct." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

**ALL CLAIMS AGAINST DCF AND DCP&P UNDER § 1983 AND THE NJCRA SHOULD BE DISMISSED BECAUSE A STATE AGENCY IS AN ARM OF THE STATE AND IS NOT SUBJECT TO SUIT UNDER THOSE STATUTES.**

Plaintiffs' § 1983 and NJCRA claims against DCF and DCP&P should be dismissed with prejudice because, as an arm of the State, those State agencies are

not "person[s]" amenable to suit under those statutes. To be liable within the meaning of §1983 or the NJCRA, a defendant must be a "person." *Estate of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 856 (3d Cir. 2014) ("[T]he NJCRA premises liability on the conduct of a 'person'".); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (establishing that states and arms of the state are not persons amenable to suit under Section 1983).

Since the NJCRA is modeled after Section 1983, courts routinely analyze federal precedent in reaching decisions regarding the NJCRA. *Lagano*, 769 F.3d at 856 ("New Jersey district courts have interpreted the NJCRA as having incorporated the Supreme Court's decision in Will that, for purposes of § 1983, states and state officials acting in their official capacity are not amenable to suit."); *Martinez v. South Woods State Prison*, 2019 WL 6130972, *2 (N.J. App. Div. Nov. 19, 2019) (holding that immunity under § 1983 equates to immunity under the NJCRA), *certif. den.*, 241 N.J. 88 (2020).

Here, there is no question that DCF and DCP&P are arms of the State of New Jersey. *See Zimmer v. New Jersey Div. of Child Prot. & Permanency*, Civ. No. 15-2524, 2016 U.S. Dist. LEXIS 6410, 2016 WL 234844, at *7 (D.N.J. Jan. 20, 2016), *aff'd*, 741 F. App'x 875 (3d Cir. 2018) ("Congress has not abrogated, and New Jersey has not waived, the state's sovereign immunity with respect to Section

July 24, 2026
Page 11

1983 claims or Section 1985 claims."). *See also*, *Sweet-Springs v. Dep't of Children & Families*, No. 12-706 FLW, 2013 U.S. Dist. LEXIS 84620, 2013 WL 3043644, at *5 (D.N.J. June 17, 2013) ("Courts in this district have long held that DCF and DYFS are, beyond dispute, arms of the state for sovereign immunity purposes. . . the State of New Jersey is the real party-in-interest."); *Doe v. Div. of Youth & Family Servs.*, 148 F. Supp. 2d 462, 491 (D.N.J. 2001); *Simmerman v. Corino*, 804 F. Supp. 644, 650 (D.N.J. 1992), *aff'd*, 16 F.3d 405 (3d Cir. 1993).

Since Plaintiffs cannot maintain their State or federal constitutional claims against DCF and DCP&P, Count Six of the Complaint against those agencies should be dismissed with prejudice. *See Owens v. Armstrong*, 171 F.Supp.3d 316, 339 (D.N.J. 2016) (dismissing South Woods State Prison with prejudice because it is not a person amenable to suit under Section 1983); *Johnson v. Glassman*, 401 N.J. Super. 222, 246-47 (N.J. App. Div. 2008) (upholding a with prejudice dismissal at the motion to dismiss stage where any amendments would be futile).

July 24, 2026
Page 12

## CONCLUSION

For the foregoing reasons, the State Defendants' motion to partially dismiss the Complaint should be granted.

Respectfully submitted,

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

By:   s/Marvin L. Freeman
      Marvin L. Freeman
      Deputy Attorney General

*Via CM/ECF*
LADDEY CLARK & RYAN
Timothy E. Dinan
60 Blue Heron Road
Suite 300
Sparta, NJ 07871